IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

STATE FARM LLOYDS,                       §
                                         §
        Plaintiff,                       §
                                         §
v.                                       §            Case No. 4:05-CV-389
                                         §
KRISTI JONES AND                         §
KELLY MCCULLOUGH,                        §
INDIVIDUALLY AND AS NEXT                 §
FRIEND OF RHETT MCCULLOUGH,              §
BROOKE MCCULLOUGH AND                    §
WESLEY MCCULLOUGH                        §
                                         §
        Defendants.                      §

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT**

_____The following motions and responses are pending before the court:

1.      Plaintiff State Farm Lloyds' Motion for Summary Judgment (docket entry #18);

2.      Defendant Kelly McCullough's (Individually and As Next of Friend of Rhett McCullough, Brooke McCullough, and Wesley McCullough) Response To State Farm Lloyds' Motion for Summary Judgment and Brief (docket entry #20);

3.      Plaintiff State Farm Lloyd's Reply to Kelly McCullough's Response to Motion for Summary Judgment (docket entry #23);

4.      Plaintiff State Farm Lloyd's Motion to Strike Deposition of Kristi Jones and Defendant's Responses to Requests for Admissions from Kelly McCullough's Response to State Farm's Motion for Summary Judgment (docket entry #24).

5.      Defendant Kelly McCullough's Sur-Reply to State Farm's Motion for Summary Judgement (docket entry #25);

6.      Defendant Kelly McCullough's (Individually and As Next of Friend of Rhett McCullough, Brooke McCullough, and Wesley McCullough) Motion to Strike

(docket entry #27);

7.    Defendant Kristi Jones' Response to State Farm Lloyd's Motion for Summary Judgment (docket entry #33);

8.    Plaintiff State Farm Lloyd's Reply to Kristi Jones' Response to State Farm Lloyd's Motion for Summary Judgment and Motion to Strike (docket entry #34).

## **MOTIONS TO STRIKE**

<u>1.</u>    <u>Plaintiff's Motion to Strike Deposition Testimony and Responses to Requests for Admissions (docket entry #24) and Defendants' Motion to Strike Criminal Testimony (docket entry #27)</u>

The Plaintiff objects to the deposition testimony of Kristi Jones in cause number 04-1682, styled *Kelly McCullough, Individually and as Next Friend of Rhett McCullough, Brooke McCullough, and Wesley McCullough v. Kristi Jones*, in the 15th Judicial District Court of Grayson County, Texas, as inadmissable hearsay under the Federal Rules of Evidence and moves to strike it from the summary judgment record.  Plaintiff does not object to a specific statement made by Jones but rather objects to admitting the deposition transcript in its entirety. Plaintiff also objects to McCullough's offering the defendants' Responses to Requests for Admissions in the same case, specifically objecting to those Requests for Admissions that were denied. Defendants, in turn, object to Jones' trial transcript, taken from the criminal trial of *State v. Jones*, Case No. 50700, in the 59th Judicial District Court of Grayson County, Texas.

In determining summary judgment motions, the court may consider only competent summary judgment evidence.  Rule 56(c) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law.

FED. R. CIV. PRO. 56(c).  The Local Rules for the Eastern District of Texas further provide, in part, as follows:

> As used within this rule, "proper summary judgment evidence" means excerpted copies of pleadings, depositions, answers to interrogatories, admissions, affidavits, and other admissible evidence cited in the motion for summary judgment or the response thereto.

LOCAL RULE CV-56(d).

Proffered evidence in a summary judgment motion need not be in admissible form, but its content must be admissible.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Examples of such evidence include attested testimony and affidavits.  *Winskunas v. Birnbaum*, 23 F.3d 1264, 1267-68 (7thCir. 1994) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)); *Celotex Corp.*, 477 U.S. at 324.  For example, an affidavit stating facts which will be proven through testimony at trial is proper summary judgment evidence.  *Id.* at 1268.

The court is not precluded from considering transcripts of deposition testimony or prior trial testimony to determine whether summary judgment is proper.  Accordingly, the Plaintiff's Motion to Strike Kristi Jones' deposition in its entirety is denied and the Defendants' Motion to Strike Kristi Jones' criminal trial testimony in its entirety is also denied.

Admissions can be used only against the party who made them in order to come within the exception to the hearsay rule for statements of a party opponent.  Accordingly, the denied Responses to Requests for Admissions may not be considered, and Plaintiff's Motion to Strike is granted as to that part.

2.       Plaintiff's Motion to Strike Kristi Jones' Response (docket entry #34)

_____Plaintiff State Farm submitted a Motion to Strike Kristi Jones' Response to State Farm

Lloyds' Motion for Summary Judgment because she filed it in an untimely manner.  The opposing

party has 15 days from the date she was served to file a response to a motion for summary judgment.

LOCAL RULE CV-7(e).  Defendant Kristi Jones was served with State Farms' summary judgment

motion and accompanying documents on March 20, 2006.  Plaintiff State Farm correctly calculated

Jones' response deadline as April 4, 2006.  Jones' Response to State Farm Lloyd's Motion for

Summary Judgment is file marked as having been received by the clerk and filed on April 4, 2006,

and not April 6, 2006, as State Farm contends in its Motion to Strike.  Accordingly, the Response

was timely filed, and State Farm's Motion to Strike Jones' Response is denied.

## BACKGROUND

State Farm Lloyds has asked the court to determine whether it has a duty to defend Kristi

Jones in a wrongful death action, styled *Kelly McCullough, Individually and as Widow and Next of*

*Friend of Rhett McCullough, Brooke McCullough, and Wesley McCullough v. Kristi Jones*, pending

in the 15th Judicial District Court of Grayson County, Texas. State Farm Lloyd's Mot. for Summ.

J., p. 1. Jones had a homeowner's insurance policy, issued by State Farm, which was in effect when

the incident giving rise to the underlying suit occurred. *Id*.  The basis for the underlying litigation

is the shooting death of Jon McCullough by Kristi Jones on June 21, 2003.

The following facts are undisputed.  At approximately 2:00 am on the morning of June 21,

2003, Defendant Kristi Jones and another man, Brian Riddle, were sitting on the porch of Jones'

Whitesboro, Texas home.  State Farm Lloyd's Mot. for Summ. J., EX. B, p. 3.  Around that time,

a gold Chevrolet Tahoe, which Jones believed belonged to Kelly McCullough, pulled up at her

home. State Farm Lloyd's Mot. for Summ. J., EX. B, p. 3-4.   Notably, Jones and the McCulloughs, specifically the deceased, had previously been involved in physical altercations.  State Farm Lloyd's Mot. for Summ. J., EX. B, p. 4.   In part because of this history, and also with the encouragement of Riddle, when the Tahoe pulled up at her home,  Jones went inside to retrieve a gun.   State Farm Lloyd's Mot. for Summ. J., EX. B, p. 4.   Jones retrieved the gun in hopes of scaring away whoever was in the car. State Farm Lloyd's Mot. for Summ. J., EX. B, p. 5.  She did not intend to shoot or harm anyone with the gun.   State Farm Lloyd's Mot. for Summ. J., EX. B, p. 5.

Jones returned to the porch with the gun, but kept it in its holster.   State Farm Lloyd's Mot. for Summ. J., EX. B, p. 5.  Upon returning,  Jones realized Gayle Riddle had gotten out of the Tahoe and was walking toward her.  State Farm Lloyd's Mot. for Summ. J., EX. B, p. 5.  Jones asked Ms. Riddle to leave her property and told Ms. Riddle that she had a gun. State Farm Lloyd's Mot. for Summ. J., EX. B, p. 6.  Jones then realized Ms. Riddle was not going to leave the property, so Jones turned back toward her house to call the police.   State Farm Lloyd's Mot. for Summ. J., EX. B, p. 6. Before entering her house, however,  Ms. Riddle grabbed Jones. State Farm Lloyd's Mot. for Summ. J., EX. B, p. 6.  This is when the "melee" began.

Jones and Ms. Riddle began to struggle and at some point Mr. Riddle became involved in the "wrestling match."  State Farm Lloyd's Mot. for Summ. J., EX. B, p. 7.  Soon thereafter all three individuals were on the ground.  State Farm Lloyd's Mot. for Summ. J., EX. B, p. 7.  At no time during the altercation, according to Jones, did she intentionally take the gun from its holster.  State Farm Lloyd's Mot. for Summ. J., EX. B, p. 8.

Jones was on the ground, face down, in the "wrestling" pile, with the gun in her hand and under her chest, when she felt something hit her shoulder.  State Farm Lloyd's Mot. for Summ. J.,

EX. B, p. 9.  She turned to see who, or what, was hitting her shoulder and saw Jon McCullough's

face and also saw his foot coming toward her face.  State Farm Lloyd's Mot. for Summ. J., EX. B,

p. 11.  At that moment she shot Jon McCullough.  *See* State Farm Lloyd's Mot. for Summ. J., EX.

B, p. 13.

Jones was arrested and tried for the murder of Jon McCullough.  At trial she put forth

evidence of, and received a jury instruction for, self-defense.  State Farm Lloyd's Mot. for Summ.

J., EX. G.  The jury rejected this evidence, as well as the state's case for murder, finding Jones guilty

of manslaughter.  State Farm Lloyd's Mot. for Summ. J., EX. H.

The parties present conflicting evidence as to Jones' state of mind throughout the altercation.

It is on this point that State Farm has moved for summary judgment.  The parties present testimony

from both the criminal trial and Jones' deposition in the underlying wrongful death action.  At the

criminal trial, Jones testified that after seeing Jon's face and foot, she pulled the trigger.  State Farm

Lloyd's Mot. for Summ. J., EX. B, p. 13.  She further testified that when she pulled the trigger, the

gun happened to be against Jon's leg.  *Id.*  In her deposition testimony, however, Jones explained that

she did not intend to pull the trigger, did not know the gun was out of its holster and did not know

she was shooting it.  Defendants' Mot. for Summ. J., EX. A (Jones' Dep.), 29:19-25; 30:8-12; 33:9-

25; 34:1-14; 36:5-23.  Rather, she surmised that this is what must have occurred by replaying the

events in her mind.  *See id.*  She further explained that her  trial testimony was merely testimony of

what she surmised had occurred, not acts she remembers consciously performing.  *Id.*

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually insufficient claims

or defenses.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Summary judgment is proper

if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The substantive law identifies which facts are material.  *See id.*  The party moving for summary judgment has the burden to show that there is no genuine issue of fact and that it is entitled to judgment as a matter of law.  *See id.* at 247.  If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  Once the movant has carried its burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  The nonmovant must adduce affirmative evidence.  *See Anderson*, 477 U.S. at 257.

Summary judgment evidence is subject to the same rules that govern admissibility of evidence at trial.  *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 175-76 (5th Cir. 1990).  In considering a motion for summary judgment, the court cannot make credibility determinations, weigh evidence, or draw inferences for the movant.  *See Anderson*, 477 U.S. at 255. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in the nonmovant's favor.  *See id.*

## DISCUSSION AND ANALYSIS

### A.    Duty to Defend Legal Standard

To determine whether an insurer has a duty to defend a lawsuit against its insured, Texas

courts generally employ the "eight corners" or "complaint allegation" rule.[1]  *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997); *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 552 (5th Cir. 2004).   In applying the eight corners rule, the finder of fact must compare the allegations in the underlying suit, that is, the suit against the insured, with the insurance policy provisions.  *Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d at 141; *Primrose Operating  Co.*, 382 F.3d at 552.  It is not the cause of action alleged that is determinative, but rather it is the facts in the petition giving rise to the alleged actionable conduct that are determinative. *Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d at 141.

        The facts alleged in the pleadings against the insured are presumed to be true; the eight corners analysis is not influenced by facts ascertained before the suit, developed in the process of litigation, or by the ultimate outcome of the suit.  *Reser v. State Farm Fire & Cas. Co.*, 981 S.W.2d 260, 263 (Tex. App.–San Antonio 1998, no pet); *Primrose Operating  Co.*, 382 F.3d at 552.  The court must apply the eight corners rule by resolving doubts in favor of the insured and giving the allegations in the pleadings a liberal interpretation. *Guaranty Nat'l Ins. Co. v. Asrock Indus., Inc.* 211 F.3d 239, 243 (5th Cir. 2000). Any doubts are resolved in the insured's favor so that if the policy *even potentially* covers an allegation in the complaint, the insurer has a duty to defend.[2]  *Enserch Corp. v. Shand Morahan & Co.,* 952 F.2d 1485, 1492 (5th Cir. 1992).

        In some situations, however, the facts alleged in the underlying petition, even if taken as true, are insufficient to determine whether the insurance policy may cover the alleged cause of action.

---

[1]Because this is a diversity case, Texas substantive law applies. *Cleere Drilling Co. v. Dominion Exploration & Prod., Inc.*, 351 F.3d 642, 646 (5th Cir. 2003).

[2] It is important to note that the duty to defend and the duty to indemnify are distinct duties. *State Farm Fire & Cas. Co. v. Brooks*, 43 F. Supp. 2d 695, 698 (E.D. Tex. 1998).  Thus, the insurer may have a duty to defend based upon the complaint allegations while it may later be determined that the insurer has no duty to indemnify.  *Id.*

"When the petition in the underlying lawsuit does not allege facts sufficient for a determination of whether those facts, even if true, are covered by the policy, the evidence adduced at the trial in a declaratory judgment action may be considered along with the allegations in the underlying petition." *State Farm Fire & Cas. Co v. Wade*, 827 S.W.2d 448, 451-52 (Tex. App.–Corpus Christi 1992, writ denied). *See also Mid-Continent Cas. Co. v. Safe Tire Disposal Corp.*, 16 S.W.3d 418, 421 (Tex. App.–Waco 2000, pet. denied).  In such a situation, the court may not "imagine factual scenarios which might trigger coverage."  *Grimes Constr., Inc. v. Great Am. Lloyds Ins. Co.*, 188 S.W.3d 805, 810 (Tex. App. - Fort Worth 2006, pet. filed) (quoting *Natl'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997)).  Rather, the court may look to extrinsic evidence.  *Wade*, 827 S.W.2d at 453; *W. Heritage Ins. Co. v. River Entm't*, 998 F.2d 311, 313 (5th Cir. 1993).

In the underlying wrongful death action, the petition alleges, in pertinent part, the following:

[1]     On or about the date aforementioned the Defendant caused the death of Jon McCullough through acts of negligence at her residence.

[2]     That the Defendant's acts constitute negligence and caused the wrongful death of Jon McCullough.

[3]     The acts and negligence of the Defendant was a direct and proximate cause of the wrongful death of Jon McCullough and the damages set forth below.

State Farm Lloyd's Mot. for Summ. J., Ex. D, p. 2.  The petition alleges no other facts.  In the instant case, State Farm argues that Jones' shooting act was not an occurrence as defined under her policy, or in the alternative, that it was an intentional act and thus excluded under the policy.

Even reading the underlying petition broadly, in favor of the insured, no pertinent facts were presented.  From the face of the petition, it is impossible to know what actions Jones took, whether

she intended these actions, and whether she intended the injury that resulted therefrom. These facts are critical in determining whether Jones' act was an occurrence and thus not covered, or in the alternative, whether the act was intentional and excluded from coverage. Thus, the court must look to the extrinsic evidence thus far produced in order to determine whether a genuine issue as to a material fact exists regarding State Farm's duty to defend.

**B.     Duty to Defend Analysis**

State Farm essentially argues that the act at issue is not covered under the policy because it was not an occurrence as defined under the policy, or alternatively, because it was intentional and therefore the Intentional Acts Exclusion precludes coverage.

*1.     Was the shooting an occurrence under the policy?*

Jones' homeowners' policy contained the following coverage provision:

> If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damages to which this coverage applies, caused by an **occurrence**, we will: ...(2) provide a defense at our expense by counsel of our choice.

State Farm Lloyds' Motion for Summ. J., Ex. A (emphasis added). The policy goes on to define "occurrence" as "an accident, including exposure to conditions, which results in: (a) bodily injury; or (b) property damage; during the policy period." State Farm Lloyds' Motion for Summ. J., Ex. A. The crux of State Farm's argument is that even if Jones did not intend to injure or kill McCullough, she intentionally fired a gun; therefore her acts were intentional, and thus not accidents. As such, the act would not be covered under the policy.

Under Texas law when an insurance policy defines an "occurrence" as an "accident" but fails to further define the term "accident," the Texas Supreme Court has found that acts which are "voluntary and intentional," are not accidents even if "the result or injury may have been unexpected,

unforeseen and unintended." *Argonaut Sw. Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex. 1973); *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 377 n. 2 (Tex. 1993); *Mid-Century Ins. Co. of Tex. v. Lindsey*, 997 S.W.2d 153, 155 (Tex. 1999).   Thus, when an underlying petition alleges intentional acts, the insurer has no duty to defend. *See id.* at 636.  Here, however, the petition alleges only "acts of negligence."   To determine in a motion for summary judgment whether the shooting at issue is an occurrence under the policy, the court must examine the undisputed facts surrounding the shooting and compare those facts to cases in which acts have been deemed intentional and thus not accidents.

State Farm points this court to several cases in support of its contention that Jones' shooting of the gun constituted an intentional act, regardless of whether she intended to injure or kill McCullough.   In many of these cases, the courts focused on the actors' intent to fire the gun. *See, e.g., State Farm Mutual Auto. Ins. Co. v. Hawkins*, 962 F. Supp. 984, 985-86 (E.D. Tex. 1996), *aff'd* 109 F.3d 765 (5th Cir. 1997); *Misle v. State Farm Mutual Auto. Ins. Co.*, 908 S.W.2d 289, 290-91 (Tex. App.–Austin 1995, no writ).   In *Hawkins*, the summary judgment evidence undisputedly showed that the defendant intentionally fired a pistol into a car. *Hawkins*, 962 F. Supp. at 986.   In *Misle*, the court focused on the defendant's undisputed deposition testimony where he testified that he intentionally fired the gun into a crowd of people.[3]   *Misle*, 908 S.W.2d at 290-91. Thus, no genuine issue of material fact existed in either case with regard to whether the actors intentionally fired the gun.   Other cases, involving acts of shooting, follow the same analysis. *See, e.g., Jones v. Estate of Santiago*, 870 So.2d 1002, 1009-10 (La. 2004).

---

[3]The court in *Misle* was evaluating the intentional acts exclusion, rather than whether the act was an occurrence, but this does not change the fact that it focused on whether the gun was intentionally fired.

In the instant case, a genuine issue of material fact exists as to whether Jones intended to fire the gun. State Farm submitted the trial transcript from Jones' criminal trial, where she gave testimony that could indicate she intended to fire the gun. State Farm Lloyds Mot. for Summ. J., Ex. B. Nonetheless, the jury clearly questioned whether she intended to fire the gun, as evidenced by the manslaughter conviction.[4] Additionally, defendants provided evidence, through deposition transcripts, that Jones: (1) did not actually intend to fire the gun; (2) made no conscious effort to pull the trigger; and (3) had no intention of pulling the trigger. Kelly McCullough's Mot. for Summ. J., Ex. A (Jones' Dep.), pp. 26, 28. Jones further explained that her answers were no different at the deposition than at the trial:

> Q:    Okay. Before I ask you about that, I'm assuming it's not your intent, ma'am, today to materially change any of your testimony that you provided at the criminal trial, correct?
>
> A:    Yes.
>
> Q:    Yes, you agree with me?
>
> A:    Yes.

*Id.* at 38:3-9.

_____

> Q:    When you - when you testified in the criminal trial that you had put the gun against Jon McCullough's leg and pulled the trigger, again that was part of this – that occurred to you after it all happened, during which time you were trying to piece together what had happened?
>
> A:    Yes.

_____

[4] Such a conviction gives the impression that the jury doubted whether Jones specifically intended to fire the gun. Had they believed beyond a reasonable doubt she intended to do so, she would have been found guilty of murder, with its higher mental culpability state of intentional. Instead, she was convicted of a crime with a lesser mental state of recklessness.

*Id.* p. 43:8-14.

Where an issue regarding a witness's credibility must be resolved, it is up to a jury, and not

the court, to judge the witness's credibility. *See Anderson*, 477 U.S. at 255.  State Farm did present

some evidence in support of its motion.  The Defendants responded, however, with evidence that,

when believed and inferences are drawn in the Defendants' favor, creates a genuine issue of material

fact as to whether Jones intentionally discharged the gun.  In other words, from this conflicting

evidence, a reasonable jury could return a verdict in the Defendants' favor.[5]  Accordingly, summary

judgment may not be granted on State Farm's first argument.

## 2.	Is the shooting excluded under the Intentional Acts Exclusion?

State Farm alternatively argues it has no duty to defend Jones because her actions were

excluded under the Intentional Acts Exclusion.  The Intentional Acts Exclusion in Jones' policy

stated: "Coverage ... do[es] not apply to: (a) bodily injury or property damage: (1) which is either

expected or intended by the insured; or (2) which is the result of willful and malicious acts of the

insured." State Farm Lloyds' Motion for Summ. J., Ex. A, p. 17.  State Farm argues that by asserting

self-defense at trial, Jones admitted shooting McCullough and cannot now argue it was accidental.

Alternatively, State Farm argues the evidence shows Jones intended or expected bodily injury.

### i.	Does the assertion of self-defense at trial preclude Jones from now asserting the shooting was an accident?

State Farm first argues that by asserting a self-defense justification at trial, Jones admitted

intentionally shooting Jon McCullough and therefore is precluded from now asserting the  shooting

was an accident.  While it is true that by asserting a self-defense claim the defendant must admit to

---

[5] Even the jury in the criminal jury did not conclude it was an intentional act.

shooting the victim,  if the jury rejects the self-defense argument, this admission will not later preclude the defendant from arguing that the shooting was accidental.

A defendant is entitled to an instruction on every defensive theory raised by the evidence. *Booth v. State*, 679 S.W.2d 498, 500 (Tex. Crim. App.–1984); *Vanbrackle v. State*, 179 S.W.3d 708, 712 (Tex. Crim. App.–2005).  This is true even when the defenses themselves are inconsistent or contradictory.  *Booth*, 679 S.W.2d at 501.  Thus, if the defendant presented sufficient evidence, he could receive an instruction for both self-defense and accident, despite the fact that one defense requires an intentional act and one does not.  *See Garcia v. State*, 492 S.W.2d 592, 595 (Tex. Crim. App–1973); *see also Vanbrackle*, 179 S.W.3d at 715 (allowing a jury instruction for both involuntary conduct and self-defense when evidence supported each instruction).

Jones put forth a self-defense instruction; however, the jury rejected it and found Jones guilty of manslaughter.  If anything, such a finding casts doubt on the contention that Jones intended to kill or injure McCullough.  Therefore, State Farm's argument that asserting self-defense at trial justifies summary judgment in State Farm's favor because it proves no genuine issue of material fact exists is rejected. Summary judgment is not proper on this ground.

ii.    Does the shooting nonetheless fall under the policy's exclusion as intentional or expected?[6]

In order to conclusively fall under the policy's intentional act exclusion, summary judgment evidence must undisputedly demonstrate that Jones either "expected or intended" the bodily injury to occur.  The evidence conclusively shows neither.

---

[6]While this issue may appear to be the same as determining whether the shooting was an occurrence under the policy (and thus unintentional), the two issues are actually distinct.  In determining whether an act is an occurrence (or accident) under the policy, the court must determine whether the act was intentional.  *Argonaut Sw. Ins. Co. v. Maupin*, 500 S.W.2d 633 (Tex. 1973).  When determining whether an incident is excluded under the intentional acts exclusion, however, the court must determine whether the injury was intended or expected.  *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 377 n. 2 (Tex. 1993).

The question of intent is one that is normally a question of fact, left to the finder of fact. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 378 (Tex. 1993). "An insured intends to injure or harm another if he intends the consequences of his act, or believes that they are substantially certain to follow." *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 8 (1965)).  Thus, while intent will extend to those injuries that were substantially certain to follow, it will not extend to those situations where only mere knowledge or appreciation of a risk exists.  *Id.*  Further, an insured who "acts in belief or consciousness that the act is causing an appreciable risk of harm to another may be negligent, and if the risk is great the conduct may be characterized as reckless or wanton, but it is not an intentional wrong."  *Id.* (citing W. PAGE KEETON ET AL., PROSSER & KEETON ON THE LAW OF TORTS § 8, at 35-6 (5th ed. 1984)).  Courts have drawn the line between negligence and intent at that point where "a known danger ceases to be only a foreseeable risk ... and becomes ... a substantial certainty."  *Id.*  Intent may sometimes be inferred as a matter of law.  Inferring intent is done on a case-by-case basis: the more likely it is that the conduct will cause harm, the more likely it is that intent to harm may be inferred as a matter of law.  *State Farm Fire & Cas. Co. v. Brooks*, 43 F. Supp. 2d 695, 699 (E.D. Tex. 1998).

State Farm argues that intent should be inferred in the case at bar because Jones brought a gun out of her house.  As stated, Texas courts do at times infer intent.  Texas courts, however, have primarily inferred intent only in those cases involving sexual misconduct.  *See, e.g.*, *Brooks*, 43 F. Supp. 2d at 699 ("Texas courts repeatedly find intent to harm may be inferred for child molestation" cases); *State Farm Fire & Cas. Co. v. Gandy*, 880 S.W.2d 129, 140 n.8 (Tex. App.–Texarkana 1994), *overruled on other grounds*, 925 S.W.2d 696 (Tex. 1996).  Thus, intent will not be inferred in the instant case.  Instead, the court must determine whether a genuine issue of material fact exists

as to whether Jones intended the consequences of her act or believed that those consequences were substantially certain to follow. *See S.S.*, 858 S.W.2d at 378.

The issue then becomes whether the manslaughter conviction, with its mental state of recklessness, is enough to undisputedly prove that Jones "expected," or was "substantially certain," that bodily injury would result. Texas has not yet addressed this issue.[7] A person acts recklessly in Texas when he "is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." TEX. PEN. CODE § 6.03. While such action may be considered a gross deviation from the standard of care that an ordinary person would exercise, no Texas court has yet said that the injury from a reckless action is "expected." Here, State Farm argues that by bringing a gun outside, she should have expected the harm to occur and the bodily injury to result. Jones, on the other hand, has stated that she did not intend to ever use the gun and was in fact returning to the house to call the police moments before the physical altercation began. If this testimony is believed and inferences are drawn in Jones' favor, a reasonable fact-finder might conclude that she could not have expected bodily injury to result from merely carrying the holstered gun outside of her home. A fact question exists as to whether Jones expected bodily injury to result from her actions that night. Based on this conflicting evidence, a reasonable jury could return a verdict that Jones did not expect bodily injury to occur to anyone that evening nor was she substantially certain that it would occur. Accordingly, summary judgment is also not proper on State Farm's second argument.

---

[7] At least one jurisdiction has found that a reckless state of mind is sufficient to trigger the intentional acts exclusion. *Allstate Ins. Co. v. Cole*, 717 N.E.2d 816, 818 (Ohio App. 1998).

-16-

## <u>CONCLUSION</u>

Upon consideration of Plaintiff State Farm Lloyd's motion for summary judgment and its responses and replies, the court concludes that Plaintiff State Farm Lloyd's motion for summary judgment (docket entry #18) is **DENIED**.  The Plaintiff's motion to strike the Deposition of Kristi Jones (docket entry #24)  is **DENIED**.  The Plaintiff's motion to strike Kristi Jones' responses denying requests for admissions (docket entry #24)  is **GRANTED**.  The Plaintiff's motion to strike Kristi Jones' reply to Plaintiff's motion for summary (docket entry #34) is **DENIED**.  Defendants' motion to strike Kristi Jones' trial testimony (docket entry #27) is **DENIED**.

**SIGNED this the 6th day of September, 2006.**

_Richard A. Schell_
_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE